O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HRACHYA GALSTYAN, | ) | CASE NO. CV 06-05249 (RZ) |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

This matter comes before the Court on the application of Plaintiff Hrachya Galstyan for review of the Commissioner's decision denying him Social Security disability benefits.

Acting as the Commissioner's delegate, the Administrative Law Judge found that Plaintiff retained the ability to perform a subset of medium work and, in doing so, the Administrative Law Judge declined to credit the opinions of the treating physicians or to credit the testimony of the Plaintiff. Both of these decisions were error, and therefore the Commissioner's decision is reversed.

Plaintiff's treating psychologist, Dr. Deaton, assessed Plaintiff as suffering from "Major Depression, recurrent, severe," "Post Traumatic Stress Disorder," and "Panic attacks with agoraphobia." He assigned Plaintiff a Global Assessment of Functioning rating of 50, "severe impairment in mood, intellect, socialization." He found that

Plaintiff's prognosis was poor, and that Plaintiff had a variety of functional restrictions. [AR 230] He reached these conclusions after administering six hours of psychological testing, and conducting four hours of interviews, over a period of two days. [AR 226] In a subsequent report, Dr. Deaton concluded that Plaintiff had not responded well to psychotherapy over a period of one year, even though assisted by psychiatric medication, and that Plaintiff had suffered further traumas. [AR 221] Administering further tests, Dr. Deaton found that Plaintiff had "severe levels of depression," "pessimistic views with a high propensity of suicidal behavior," severe levels of anxiety, and was in the borderline organic range. [AR 222] Dr. Deaton concluded that Plaintiff had clinical levels of depression, and that Plaintiff was unable to concentrate sufficiently to perform even simple or repetitive tasks," could not work effectively with others, and could not learn new skills because of his anxiety and cognitive disorder. [AR 221]. This time he rated Plaintiff with a GAF of 48. [AR 220]

        The Administrative Law Judge, however, said that the GAF of 48 "is not supported by the record, based on minimal progress notes submitted by Dr. Deaton which are generally not legible (Exhibit 1F, p.2)." The referenced exhibit page number is not a reference to progress notes, legible or otherwise. The progress notes which do appear at the end are far more legible than many doctor's notes which administrative law judges regularly review. And, if the Administrative Law Judge could *not* read the progress notes, he could have subpoenaed the doctor, or simply telephoned him (with agreement from Plaintiff, or in his presence) and asked him what they said, or requested a typed transcription, or taken *some* step to find out what they said. This is not an adversarial process, and it would have been fitting to inquire. 20 C.F.R. §§ 404.1512(e); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).

        The Administrative Law Judge also discredited Dr. Deaton because he articulated an opinion about Plaintiff's disability. But while the opinion of disability itself is not entitled to *controlling* weight, that is not a reason to give it no consideration at all. What else did the Administrative Law Judge rely on? He referenced the State Agency

medical consultant, who "found the claimant was not significantly limited in the majority of mental areas in a mental capacity assessment on April 16, 2004." [AR 21, referencing Exhibit 7F]  The state agency consultant, of course, had no progress notes whatsoever, because he had not treated Plaintiff.  He appeared to rely heavily on a consulting psychologist's examination (which also, of course, had no accompanying progress reports), and in particular on a slice of that report, where the consultant said that Plaintiff "generally puts forth a poor effort towards psychometric testing."  [AR 207]  But what does this mean?  The follow-on comment says that Plaintiff "gives his examiner fleeting eye contact" [*id.*], and that certainly would be consistent with someone suffering from major depression.  And then the test results which *would* support Plaintiff are down-played: Plaintiff's "IQ Quotient" [sic] is listed as 65, followed by the unexplained comment that "[t]he test results appear to be an underestimation of the claimant's functional level at this time."  And there is no expressed disagreement with the kinds of tests Dr. Deaton performed, or their outcomes.  This report is not a sufficient basis for declining to credit Dr. Deaton's assessment.

        The Administrative Law Judge erred when he gave Dr. Deaton's opinion "little, if any weight," [AR 23] which he expressly did on the grounds that Dr. Deaton had rendered an opinion on disability, that "he argues . . . as an advocate," and that his findings are not supported by the records.  The Administrative Law Judge referenced two exhibits (records Dr. Deaton had submitted) but did not say what in those records undermined Dr. Deaton's findings.  He did not explain why he thought Dr. Deaton was arguing as an advocate, and the facts belie this statement; Dr. Deaton administered various psychological tests, interviewed Plaintiff, followed Plaintiff's progress, and rendered his opinion.  And, while it is true that the ultimate decision on disability is the Commissioner's, not the physician's, nevertheless the physician's opinion is entitled to a fair consideration.  Even if a treating physician's opinion is not given controlling weight, it still often is entitled to the greatest weight, and may form the basis for the decision.  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

1    The Administrative Law Judge also erred in discrediting the Plaintiff. The Administrative Law Judge gave the following reasons: that the consultative psychological examiner noted that Plaintiff put forth "poor effort" during psychometric testing; that Plaintiff's testimony was inconsistent, because he said he had headaches as side effects from his medications, but previously reported no side effects; and that he has a valid driver's license. The Court simply does not understand the last reason given; the Department of Motor Vehicles makes no judgments about a person's mental state. Nor does the Court find the statement about medications persuasive. When asked at the hearing about the issue, Plaintiff said that he was not sure if the headaches were caused by the medications or not. [AR 276] Moreover, one of the medications on the list is Tylenol, at a 500 mg. dosage, and the reason Plaintiff listed for taking it was headaches. [AR 90] The Court also does not find the consultant's comments about "poor effort" to bear on the issue of credibility. The consultant did not say that Plaintiff was faking, and poor effort may well be consistent with the diagnosis of major depression. Finally, the Administrative Law Judge did not identify which testimony he found to be unbelievable. It is not enough to say simply that the allegations of the claimant generally are not credible; the Administrative Law Judge must identify which allegations. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Little would be gained by remanding this action. The record is fully developed. Accordingly, it is appropriate to order the award of benefits. *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004).

The decision of the Commissioner is reversed, and the matter is remanded for an award of benefits.

DATED: October 2, 2007

RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE